IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

MICHAEL ANTHONY WALKER, SR.,

    Defendant.

Case No. 23-CR-141-JFH

## OPINION AND ORDER

Before the Court is a Motion to Revoke Order Setting Conditions of Release ("Motion") filed by the United States of America ("Government"). Dkt. No. 30. For the following reasons, the Government's Motion [Dkt. No. 30] is GRANTED, the Order Setting Conditions of Release [Dkt. No. 25] is REVOKED, and Defendant Michael Anthony Walker, Sr. is ordered DETAINED pending trial.

## BACKGROUND

On April 17, 2023, the Government filed an indictment charging Defendant with three counts: (1) First Degree Felony Murder in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 1111; (2) Arson of a Dwelling in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 81; and (3) Arson in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 81. Dkt. No. 27. The indictment alleges that on or about November 6, 2018, Defendant caused the death of Katherine Ann Lowrey ("Lowrey") by setting fire to a dwelling located at 501 North Cherokee Avenue, Dewey, Oklahoma. *Id*. at 1-2. The indictment further alleges that on that same day, Defendant set fire to a vehicle belonging to Cynthia Fish ("Fish"). *Id*. at 3.

Defendant was originally charged for this crime in state court. Dkt. No. 30 at 5. However, following the *McGirt* decision, the case was dismissed. *Id*. Although the case was dismissed,

Defendant remained in custody on an unrelated attempted arson and violation of a protective order conviction. *Id*. (citing Case No. CF-2018-427, Washington County, Oklahoma). On June 15, 2021, the Government filed a complaint in the instant matter [Dkt. No. 1], but elected to wait to arrest Defendant until he had completed his sentence in CF-2018-427. *Id*. On April 10, 2023, Defendant was released from custody related to CF-2018-427 and was arrested on the federal complaint. *Id*.

Defendant's initial appearance was held on April 12, 2023 before Magistrate Judge Christine D. Little. Dkt. No. 18. At that time, Defendant requested a detention hearing, which was held on April 14, 2023 and continued to April 17, 2023. Dkt. Nos. 21, 23. Following argument and evidence at the detention hearings, Magistrate Judge Little ordered Defendant released pending trial on certain conditions. Dkt. No. 25. The Government filed the instant Motion asking this Court to revoke Magistrate Judge Little's release order pursuant to 18 U.S.C. § 3145(a) and order Defendant detained pending trial. Dkt. No. 30 at 1. Defendant filed a response in opposition to the Government's Motion. Dkt. No. 36. The Could held an evidentiary hearing on May 1, 2023. The Court noted that both the Government and Defendant made proffers at the detention hearing based on the state preliminary hearing transcript, although neither side had offered the transcript. The Court inquired whether either side wished to offer the preliminary transcript. The Government offered the preliminary hearing transcript (Case No. CF-19-205, Washington County District Court), along with exhibits, without objection by Defendant.

## AUTHORITY AND ANALYSIS

Under the Bail Reform Act of 1984, a court must order a criminal defendant's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of any other

person and the community." 18 U.S.C. § 3142(e)(1). In making this determination, the Court must consider:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) The weight of the evidence against the [defendant];

(3) The history and characteristic of the [defendant], including –

    a. The [defendant's] character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

    b. Whether, at the time of the current offense, or arrest, the [defendant] was on probation, on parole, or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal, State, or local law; and

(4) The nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release.

18 U.S.C. § 3142(g). The Government has the burden of proving by a preponderance of the evidence that the defendant presents a risk of flight and by clear and convincing evidence that he presents a danger to the community. *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). Where a magistrate judge orders a defendant released, the Government may file a motion to revoke the release order. 18 U.S.C. § 3145(a). The district court reviews such a motion de novo. *Cisneros*, 328 F.3d at 616 n.1.

Here, the § 3142(g) factors weigh in favor of detention.

I.  **The nature and circumstances of the offense charged.**

Defendant is accused of intentionally setting fire to a residence and a vehicle belonging to Fish. Dkt. No. 27. Defendant is further accused of causing Lowrey's death, as a result of setting fire to the residence. *Id.*

In evaluating the nature and circumstances of the offense charged, the court should consider "whether the offense is a crime of violence." 18 U.S.C. § 3142(g)(1). The Bail Reform Act defines a "crime of violence" as: "(A) an offense that has as an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense; or (C) any felony under chapter 77, 109A, 110, or 117." 18 U.S.C. § 3156. Although the Tenth Circuit has not directly addressed the question, several courts have held that arson is a "crime of violence" under this statute. *See e.g., United States v. Mitchell*, 23 F.3d 1, 2 n. 3 (1st Cir. 1994) (per curiam) (holding that federal arson as set forth in 18 U.S.C. § 844(i) is a "crime of violence" under 18 U.S.C. § 3156(a)(4)); *United States v. Marzullo*, 780 F.Supp. 658, 662 & n. 7 (W.D. Mo. 1991) (same); *United States v. Shaker*, 665 F.Supp. 698, 702 n. 4 (N.D. Ind. 1987) (same); *United States v. Chippewa*, No. 21-CR-337-JFH, 2023 WL 1778339, at *2 (N.D. Okla. Feb. 6, 2023).

The nature and circumstances of the offense charged weigh in favor of detention. Because the offensive conduct in this case demonstrates a clear use of physical force—*i.e., fire*—against the person and property of another, this further drives this factor in favor of detention.

II.  **The weight of the evidence.**

The Government suggests because there is a large volume of discovery in this case, the weight of the evidence against Defendant is, automatically, heavy. Dkt. No. 30 at 11 (citing

"thousands of pages of discovery, multiple witness interviews, Facebook records, and phone records."). Defendant, on the other hand, argues that the weight of the evidence against him is light because the evidence is "purely circumstantial." Dkt. No. 36 at 4. Both parties are wrong. A large amount of discovery produced in a case does not necessarily mean that there is a great weight of evidence against a defendant. Likewise, many cases before this Court consist of purely circumstantial evidence. "As a general rule, the law makes no distinction between direct and circumstantial evidence." Tenth Circuit Pattern Jury Instructions Criminal § 1.07.

The evidence in this case shows that on November 6, 2018, a fire was reported around 1:19 a.m. at 501 North Cherokee in Dewey, Oklahoma. Dkt. No. 30 at 2. Both the residence and a vehicle on the property belonging to Fish had been set on fire. *Id*. Lowrey, who was present in the residence at the time of the fire, along with two dogs inside the residence, were found unresponsive. *Id*.

The previous day, Fish and Lowrey were at Defendant's house. *Id*. at 2-3. Fish and Defendant were in a relationship at that time. Dkt. No. 30 at 3. At some point, Defendant asked Fish and Lowrey to leave his house. *Id*. Fish and Lowrey took Lowrey's truck back to Fish's residence at 501 North Cherokee in Dewey, Oklahoma. *Id*. When they arrived, Fish and Lowrey went inside, leaving Fish's purse inside the truck. *Id*. Fish and Defendant continued communicating via Facebook Messenger throughout the evening. Dkt. No. 30 at 3. Later, when Fish returned to the truck to retrieve her purse, she discovered her purse was gone. *Id*. Later, Defendant sent Fish a message which indicated that he had read a letter she had written to another man in a notebook she kept inside her purse. *Id*.

Upon receiving that message from Defendant, Fish left her residence in Lowrey's truck and visited Brock Price ("Price") who lived on her street. *Id*. Fish told Price that she suspected

Defendant had taken her purse. Dkt. No. 30 at 3. Price called and spoke with Defendant at 12:01 a.m. for approximately 13 minutes. *Id*. During the phone call, Defendant indicated that he believed Fish was cheating on him. *Id*. At 12:19 a.m., Defendant messaged Price asking him what man Fish was with right then. *Id*. at 3-4. Price did not respond. Dkt. No. 30 at 4. At 1:02 a.m., Defendant messaged Price again saying, "sorry bro but got to laugh." *Id*. At approximately 1:20 a.m., Price received a phone call informing him that a house on his street was on fire. *Id*. Upon hearing the news, Fish ran outside and saw it was her house that was on fire. *Id*.

Early on November 6, 2018, Defendant was also communicating with another girlfriend, Sheryl Shacklefoot ("Shacklefoot"), via Facebook Messenger. Dkt. No. 30 at 4. At 1:22 a.m., he messaged Shacklefoot telling her that he was on his was to Pawhuska to pick her up. *Id*. Defendant then sent Shacklefoot photographs of various parts of the road as he was driving to Pawhuska. *Id*. Around 1:45 a.m., he messaged Shacklefoot that he had arrived in Pawhuska. He picked her up shortly thereafter. *Id*.

On the afternoon of November 6, 2018, Defendant was interviewed by the Oklahoma State Bureau of Investigation. Dkt. No. 30 at 4. While Defendant admitted that he did go to Fish's house on November 5 around 10:30 p.m., and that he had taken the letter she had written from her purse, he denied taking her purse. Dkt. No. 37 at 5:23-24, 6:2-8. Defendant also stated that he went to Price's residence after leaving Fish's residence that night, and that he had heard a male and female's voice from inside the residence. *Id*. at 6:23-25, 7:1. Defendant also claimed he was already in Pawhuska by the time the fire was reported at 1:19 a.m. Dkt. No. 30 at 4.

Following the execution of a search warrant at Defendant's house, Fish's purse was found just outside his residence and Defendant's DNA was recovered from the purse. *Id*. Additionally, Defendant's claim that he was in Pawhuska with Shacklefoot at the time the fire was reported at

1:19 a.m. was demonstrated to be false by Facebook Messenger records, which placed Defendant's arrival in Pawhuska around 1:45 a.m. *Id*. Investigation in the case determined that it takes approximately thirty-seven (37) minutes to travel from 501 North Cherokee to Pawhuska, indicating that Defendant had not left Dewey until after the fire had been started. Dkt. No. 37 at 7:22-25, 8:1-3.

Defendant's belief that Fish was cheating on him seems to have provided him motive to be upset with her. While circumstantial, Defendant's admitted presence at Fish's residence on the night of the fire, along with his dishonesty about taking Fish's purse and the time he arrived in Pawhuska, is evidence which implicates him in the charged offense. In this Court's view, these circumstances tip the scales slightly in favor of detention. However, even if this Court were to view the weight of the evidence as neutral, the remaining factors still weigh in favor of detention.

### III.     The history and characteristics of Defendant

Neither party provided the Court with Defendant's pretrial services report. However, based upon the briefing, the Court finds that Defendant's history and characteristics weigh in favor of detention. First, Defendant has pled guilty in two other arson cases. Dkt. No. 36 at 5. While Defendant attempts to minimize his responsibility in these cases, the Court finds that Defendant's repeated involvement with arson creates a concerning pattern of behavior.

Next, while Defendant admits that he is an addict with an extensive substance abuse history, he argues that he is three years sober and is "open to learning new things." Dkt. No. 36 at 5-6. However, the Court notes that Defendant's sobriety coincides with his arrest and subsequent incarceration in 2019. Further, while Defendant has provided the Court with copies of certificates demonstrating completion of various trade and reentry courses, the Court is not aware of Defendant participating in any drug addiction or substance abuse courses, or any inpatient treatment program.

*See* Dkt. No. 36-2. While the Court notes that Defendant is now seeking placement in a sober living house, the Court has concerns about the effectiveness of a sober living house without first receiving appropriate treatment for his admitted addiction.

Finally, regarding his ties to Oklahoma, Defendant states that his wife, Emma Hurst ("Hurst"), will support him during his pretrial release and ensure his presence at court appearances. Dkt. No. 36 at 5. Specifically, Defendant states that he has been with Hurst "for over a decade," seemingly characterizing the relationship as solid and stable. *Id*. The Court notes, however, that at the time of the charged crime, Defendant had at least two other girlfriends. Additionally, one of Defendant's previous arson convictions was a result of Defendant setting fire to Hurst's house and violating a protective order she had against him at the time. Regardless of Defendant's current relationship status with Hurst, Hurst's involvement in Defendant's pretrial release plan does not alleviate any of the Court's concerns regarding Defendant's history and characteristics. Therefore, this factor weighs in favor of detention.

**IV.     The nature and circumstances of the danger to any person or the community.**

"The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989). As noted, Defendant has demonstrated a pattern of engaging in arson. While Defendant argues this behavior was a result of his prior substance abuse and has expressed an interest in receiving treatment via PRANA House Sober Living in Oklahoma City, the Court is not satisfied that if released, Defendant would abstain from substance abuse and criminal activity. The Court cannot overlook the fact that Defendant's purported sobriety coincides with a time period in which he has been incarcerated. Accordingly, this factor weighs in favor of detention.

## CONCLUSION

Having conducted a de novo review, the Court finds that the Government has shown by clear and convincing evidence that Defendant presents a danger to the community and no condition or combination of conditions will alleviate this risk. Therefore, Defendant will be detained pending trial.

IT IS THEREFORE ORDERED that the Government's Motion [Dkt. No. 30] is GRANTED and the Order Setting Conditions of Release [Dkt. No. 25] is REVOKED.

IT IS FURTHER ORDERED that Defendant Michael Anthony Walker, Sr. shall be detained pending trial. Defendant is committed to the custody of the Attorney General or a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. Defendant must be afforded a reasonable opportunity to consult privately with defense counsel. On order of the United States Court or on request of an attorney for the Government, the person in charge of the corrections facility must deliver Defendant to the United States Marshal for a court appearance.

DATED this 2nd day of May 2023.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE