IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL ANTHONY WALKER, SR.,<br><br>Defendant. | Case No. 23-CR-141-JFH |

## OPINION AND ORDER

Before the Court is a Motion to Dismiss for Failure to Comply with Interstate Agreement on Detainers Act ("Motion") filed by Defendant Michael Anthony Walker, Sr. ("Defendant"). Dkt. No. 57. The United States of America ("Government") filed a response agreeing that the Interstate Agreement on Detainers Act has been violated and, therefore, dismissal is appropriate. Dkt. No. 63. The sole issue for the Court is whether the indictment should be dismissed with or without prejudice. For the following reasons, Defendant's Motion [Dkt. No. 57] is GRANTED IN PART AND DENIED IN PART. The Motion is granted in part in that the indictment [Dkt. No. 27] is DISMISSED and it is denied in part in that the indictment is dismissed WITHOUT PREJUDICE.

## BACKGROUND

On June 15, 2021, a complaint was filed charging Defendant with First Degree Murder by Arson in Indian Country in violation of 18 U.S.C. §§ 1151, 1152, and 1111, thereby initiating the present action. Dkt. No. 1. A warrant was issued for Defendant's arrest that same day. Dkt. No. 2. At that time, Defendant was in the custody of the Oklahoma Department of Corrections serving a sentence at the Joseph Harp Correctional Center ("JHCC") in Lexington, Oklahoma on unrelated state charges. Dkt. No. 57 at 2. Upon the issuance of the warrant, Special Agent Joe Ogden sent

a letter to JHCC to inform the facility that a federal criminal matter had been filed against Defendant and, further, to request that Defendant be held for transfer to federal custody prior to being released from state custody. *Id*.; *see also* Dkt. No. 59 at 3. On August 27, 2021, the Federal Public Defender for the District of New Mexico was appointed to represent Defendant in the federal case. Dkt. No. 4.

On December 12, 2021, Defendant submitted an Inmate/Offender Grievance ("Grievance") to JHCC. Dkt. No. 59 at 5. In Defendant's Grievance, he stated that he was seeking final disposition on his pending federal charges pursuant to the Interstate Agreement on Detainers Act ("IADA"). *Id*. The Grievance alleged that Defendant had requested the assistance of the JHCC staff and his case manager in pursing final disposition under the IADA, but that they had refused to help. *Id*.

On December 27 and 28, 2021, Defendant's IADA forms were completed by Defendant and JHCC and sent to the Court and the United States District Attorney's Office. Dkt. No. 59 at 7-10. Upon receipt of the forms, the Court entered a minute order noting that it had received the IADA forms, but that "[d]efendants in criminal matters represented by counsel must make motions through counsel rather than pro se" and, therefore, stated that the IADA forms would be sent to defense counsel. Dkt. No. 6.

On February 9, 2022, Assistant United States Attorney Chantelle Dial ("Ms. Dial") sent an email to Lori Spears, the records custodian at JHCC, acknowledging receipt of Defendant's IADA forms. Dkt. No. 57 at 3; Dkt. No. 59 at 11. Ms. Dial stated that the Government planned to wait until Defendant had finished, or nearly finished, his state sentence prior to bringing him into federal custody to prosecute the federal matter. *Id*. Ms. Dial explained that after conferring with her supervisor, it was their belief that because Defendant was not currently detained on the

Government's warrant, the Government had no obligation to bring Defendant into federal custody at that time. *Id*. She further offered to speak with the JHCC legal department to the extent they disagreed with the Government's conclusion. *Id*.

On July 28, 2022, Defendant filed a pro se motion seeking to dismiss the complaint. Dkt. No. 7. Defendant argued that his right to a speedy trial had been violated because the Government refused his request to be brought to trial. *Id*. at 1-3. The Government responded arguing that Defendant's right to a speedy trial under 18 U.S.C. § 3161(b) had not been triggered because Defendant had not yet been arrested on his federal warrant or served with a summons for his federal charges. Dkt. No. 10. As this case had not yet been assigned to a district court judge, the magistrate judge issued an order denying Defendant's motion to dismiss, agreeing with the Government that 18 U.S.C. § 3161(b) had not yet been triggered. *See* Dkt. No. 11. Defendant's rights under the IADA were not addressed. *Id*.

On April 10, 2023, Defendant was released from state custody and was held on the federal detainer. Dkt. No. 57 at 3. On April 17, 2023, the Government filed an indictment charging Defendant with three counts: (1) First Degree Felony Murder in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 1111; (2) Arson of a Dwelling in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 81; and (3) Arson in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 81. Dkt. No. 27. This case is now set on the Court's June 20, 2023 jury trial docket. Dkt. No. 33.

## AUTHORITY AND ANALYSIS

The Interstate Agreement on Detainers Act ("IADA") is an interstate compact among the states, the Federal Government, and other districts and territories of the United States for the purpose of encouraging the expeditious and orderly disposition of charges that are outstanding

against prisoners who are incarcerated in other jurisdictions, as well as the expeditious and orderly determination of the proper status of detainers based on untried indictments, informations, or complaints. 18 U.S.C. App. 2 § 2, Art. I; *see also Alabama v. Bozeman*, 533 U.S. 146, 148 (2001); *United States v. Mauro*, 436 U.S. 340 (1978). In order to accomplish its purpose, the IADA prescribes procedures by which a prisoner may demand the speedy disposition of charges pending against him in another jurisdiction, as well as procedures by which a jurisdiction may obtain custody, for purposes of trial, of a prisoner who is incarcerated in another jurisdiction. *Id.*

The IADA states that when a detainer has been lodged against a prisoner, the facility having custody of the prisoner "shall promptly inform him of the source and contents of any detainer lodged against him and shall inform him of his right to make a request for final disposition of the indictment, information, or complaint on which the detainer is based." 18 U.S.C. App. 2 § 2, Art. III(c). If the prisoner requests final disposition of the charges, the jurisdiction that lodged the detainer must bring the prisoner to trial within 180 days. 18 U.S.C. App. 2 § 2, Art. III(a); *United States v. Mauro*, 436 U.S. 340, 351–354 (1978). If the prisoner is not brought to trial within the 180 day period, the court "shall enter an order dismissing the [indictment, information, or complaint] . . . ." 18 U.S.C. App. 2 § 2, Art. III(d); *see also United States v. Cartwright*, 23 F.4th 1075, 1078 (8th Cir. 2022).

To request final disposition of the charges under the IADA, the prisoner must "deliver[ ] to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint." 18 U.S.C. App. 2 § 2, Art. III(a). Further, "[t]he request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time

already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner." *Id*.

The Government concedes that Defendant complied with the procedures of the IADA and that, because the Government failed to bring him to trial within 180 days of his request for final disposition of the complaint, the indictment should be dismissed. Dkt. No. 63 at 1. However, the Government argues that because its violation of the IADA was inadvertent, the dismissal should be without prejudice. *Id*.

The IADA provides that when the United States is the "receiving State," dismissal of the indictment may be with or without prejudice. *See* 18 U.S.C. App. 2 § 9; *see also Cartwright*, 23 F.4th at 1078. The Court "must weigh three non-exclusive factors in considering how to dismiss an indictment: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice." *Cartwright*, 23 F.4th at 1078 (quoting 18 U.S.C. App. 2 § 9(1)) (internal quotations omitted). The Court will consider each factor in turn.

A.  **Seriousness of the offense**

"The seriousness of the offense depends in part upon 'the nature of the conduct charged and the potential sentence.'" *Id*. (quoting *United States v. Macomber*, 717 F.3d 607, 611 (8th Cir. 2013)); *see also United States v. McKinney*, 395 F.3d 837, 841 (8th Cir. 2022). Contrary to Defendant's argument, the strength of the Government's case or the likelihood of a conviction is not a consideration under this factor.

Here, Defendant is charged with one count of first degree felony murder and two counts of arson. Dkt. No. 27. If convicted, Defendant faces a sentence of up to a life. 18 U.S.C. §§ 1111,

5

81. Based upon the nature of the charged conduct—murder and arson— and the potential life sentence if convicted, the Court finds that this a serious offense. Accordingly, this factor supports dismissal without prejudice.

### B. Facts and circumstances that led to dismissal

As explained above, the purpose of the IADA is to encourage the expeditious and orderly disposition of charges that are outstanding against prisoners who are incarcerated in other jurisdictions, as well as the expeditious and orderly determination of the proper status of detainers based on untried indictments, informations, or complaints. 18 U.S.C. App 2 § 2; *see also Bozeman*, 533 U.S. at 148; *Mauro*, 436 U.S. 340. "Bad faith or a pattern of negligence by the government may weigh in favor of dismissal with prejudice" under this factor. *Macomber*, 717 F.3d at 611 (quoting *McKinney*, 395 F.3d at 841).

Defendant argues that the Government acted in bad faith by "acknowledg[ing] receipt of [Defendant's] request and intentionally cho[osing] to ignore it . . . ." Dkt. No. 57 at 8. However, the Court finds that this mischaracterizes the Government's actions related to Defendant's request. First, the Government did not "ignore" Defendant's request. The evidence presented by Defendant shows that upon receipt of Defendant's IADA forms, Ms. Dial reviewed them and discussed them with her supervisor. Dkt. No. 59 at 11. After consideration, the Government incorrectly concluded that because Defendant was not detained on the federal warrant, the Government did not have any obligation to bring him to trial at that time. *Id*. Ms. Dial explained her position and then offered to discuss the issue further with the JHCC legal department if they disagreed. The evidence does not indicate a deliberate decision to violate the IADA, but rather a misunderstanding regarding Defendant's requested relief and the Government's obligations under the IADA. The Court notes that the magistrate judge also appears to have misunderstood Defendant's requested relief. *See*

Dkt. Nos. 6, 11. The Court finds that the circumstances that led to dismissal here are not an instance of prosecutorial bad faith and further finds that there is no evidence of a pattern of neglect or intentional violation of the IADA. Accordingly, this factor also favors dismissal without prejudice.

### C. Impact of reprosecution

Finally, the Court must examine the impact of reprosecution on the administration of the agreement on detainers and on the administration of justice. In determining this factor, the Court should consider "whether the prosecution had an improper motive, and whether the violation prejudiced the defendant." *McKinney*, 395 F.3d at 841.

The Court has already concluded that the Government did not have an improper motive in violating the IADA. Regarding prejudice, Defendant argues that the delay in his case is egregious and that he has experienced "protracted stress and uncertainty about the disposition of this case." Dkt. No. 57 at 9. Defendant further argues that he is prejudiced because the delay allowed time for the Government to work a deal with a key witness in this matter, Cynthia Fish, and denied him the possibility of having his state court sentence run concurrently with a sentence imposed in this matter. *Id*.

The Government concedes that the delay in this case was significant. Dkt. No. 63 at 9. The Court agrees. However, because the Court finds that there was not an improper motive underlying the delay, it does not rise to the level of egregious.

Further, the Court finds that the prejudicial effect of any alleged deal between the Government and Cynthia Fish is merely speculative, as is any alleged prejudice based upon Defendant's ability to serve his state court sentence concurrently with a sentence imposed in this case. Plainly, Defendant has not provided any factual information beyond his own conclusory

statements to demonstrate prejudice. For these reasons, the Court finds that this factor favors dismissal without prejudice.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss for Failure to Comply with Interstate Agreement on Detainers Act [Dkt. No. 57] is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that the indictment [Dkt. No. 27] is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendant Michael Anthony Walker, Sr. shall be RELEASED.

DATED this 22nd of May 2023.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE